**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

GEORGE A. ROSSER,

        Plaintiff,

    vs.                       Civil Action 2:13-cv-674
                                    Judge Watson
                                    Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

**I.   Background**

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits.  This matter is now before the Court on *Plaintiff George A. Rosser's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 9, the Commissioner's *Opposition to Statement of Errors*, Doc. No. 16, and *Plaintiff's Reply*, Doc. No. 18.

    Plaintiff George A. Rosser filed his application for benefits on August 10, 2010, alleging that he has been disabled since March 8, 2005.  *PAGEID* 160.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    An administrative hearing was held on May 17, 2012, at which plaintiff, represented by counsel, appeared and testified, as did Robert Hartung, who testified as a vocational expert.  *PAGEID* 56.  In

a decision dated June 21, 2012, the administrative law judge concluded that plaintiff was not disabled from March 8, 2005, the alleged disability onset date, through December 31, 2010, the date plaintiff was last insured. *PAGEID* 121. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 30, 2013. *PAGEID* 32.

Plaintiff was 46 years of age on the date of the administrative law judge's decision. *See PAGEID* 121, 160. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a welder fitter and truck driver. *PAGEID* 120. Plaintiff was last insured for disability insurance purposes on December 31, 2010. *PAGEID* 116. He did not engage in substantial gainful activity from his alleged onset date of March 8, 2005, through his date last insured of December 31, 2010. *Id*.

## II. Medical Evidence

Plaintiff injured his spine and shoulder in 2003 while working as a delivery driver. Plaintiff eventually returned to work on light duty, but reinjured his neck and back on March 8, 2005 when he slipped on ice. *See e.g., PAGEID* 666, 671.

Plaintiff treated with Jon H. Pearlman, M.D., on December 16, 2004, for pain, weakness, and numbness in his neck, right shoulder, and arm. *PAGEID* 334-35. Dr. Pearlman diagnosed cervical disc displacement and right shoulder impingement. *PAGEID* 335.

An MRI of the right shoulder on July 19, 2006 revealed acromioclavicular joint arthritic change and fluid collection anterior

to the superior portion of the glenoid labrum, which was interpreted as suggestive of a paralabral cyst. *PAGEID* 340, 345-46. A January 2007 right shoulder arthrogram was "unremarkable" with no evidence of rotator cuff tear; an MRI revealed bone spurs that were the "likely source of rotator cuff impingement" and "abnormal focal signal in the distal supraspinatous tendon which is likely focal tendinosis." *PAGEID* 330-31.

Dr. Keith A. Hollingsworth, M.D., performed an arthroscopic right subacromial decompression and acromioplasty, arthroscopic right distal clavicle resection, and primary limited arthroscopic debridement of the right shoulder torn rotator cuff on October 24, 2007. *PAGEID* 365-67. On November 6, 2007, plaintiff had "[m]inimal complaints of pain" and 5/5 rotator cuff strength. *PAGEID* 359. Plaintiff's forward flexion range of motion was 175 degrees; his external rotation range of motion was 75 degrees. *Id*.

Plaintiff twisted his knee while "help[ing] a gentleman with his vehicle" and, on December 6, 2007, was diagnosed with right knee ACL tear. *PAGEID* 357. Plaintiff underwent an ACL reconstruction on January 14, 2008. *PAGEID* 362-64. On January 17 and 29, 2008, plaintiff reported that his pain was improving. *PAGEID* 355-56. On April 3, 2008, plaintiff reported "some weakness in his leg" but that he was "doing well" otherwise. *PAGEID* 354. Upon examination, it was noted that plaintiff had an inch of atrophy, full range of motion, and negative Lachman, drawer and pivot shift. *PAGEID* 354.

3

Plaintiff treated with Dr. Pearlman on April 28, 2008, for neck pain and right shoulder pain. *PAGEID* 336-37. Clinical examination revealed mild tenderness of the lower cervical paraspinal muscles, full right shoulder range of motion, and moderate shoulder pain with external and internal rotation. *Id*. A May 2008 MRI of the cervical spine revealed mild broad-based disk protrusion at C5-6 and C6-7 and was unchanged from plaintiff's October 2007 MRI. *PAGEID* 340, 347-48.

On August 19, 2008, plaintiff consulted with surgeon Bradford B. Mullin, M.D., who suggested an anterior cervical discectomy, fixation and fusion, to address herniated discs at C5-6 and C6-7. *PAGEID* 430-31. Plaintiff was informed that the procedure offered an 80 percent change of relieving a radiculopathy and a 70 percent chance that the surgery would help plaintiff. *Id*. Plaintiff did not proceed with the surgery, and Dr. Mullin recommended the surgery again on August 17, 2010. *PAGEID* 432-33. Again, plaintiff did not proceed with the surgery.

On August 25, 2008, Dr. Pearlman noted mild tenderness at the posterior cervical thoracic junction, full range of motion in the shoulder, and normal strength and muscle tone bilaterally in the upper extremities. *PAGEID* 338. Similar findings were made on February 25, 2009, at which time plaintiff also had a negative tinel sign over the medial nerve at the right wrist. *PAGEID* 340-41. A right upper extremity EMG/NCS on March 26, 2009 revealed mild right carpal tunnel neuropathy. *PAGEID* 342-43. On August 1, 2011, plaintiff reported pain over the prior six months in his right arm and hand associated

4

with numbness in his right third, fourth, and fifth fingers, and pain radiating into his left shoulder, upper arm, and left hand. *PAGEID* 678. A November 7, 2011 EMG/NCS of the right upper extremity revealed moderate right carpal tunnel neuropathy. *PAGEID* 489, 675.

Plaintiff again saw Dr. Hollingsworth on April 30, 2009 for right shoulder pain after he had "been doing quite a bit of lifting." *PAGEID* 353. Upon examination, plaintiff's right rotator cuff strength was rated 4/5. *Id*. A June 9, 2009 MRI of the right shoulder revealed no evidence of rotator cuff tear or of labral tear; it was noted that moderate hypertrophic osteoarthropathy of the acromioclavicular joint could contribute to subacromial impingement. *PAGEID* 350-51. On June 16, 2009, Dr. Hollingsworth found right rotator cuff strength of 5/5. *PAGEID* 352.

An August 10, 2010 MRI of the cervical spine revealed moderate degenerative changes at C4-5 through C6-7, with some central canal stenosis and mild neural foraminal narrowing. *PAGEID* 492-93.

Plaintiff treated regularly with Jeffrey Haggenjos, D.O., for more than 20 years. *See PAGEID* 439, 682-711. On August 30, 2010, Dr. Haggenjos recommended surgery and opined that plaintiff was "unable to work." *PAGEID* 435-37. On November 1, 2010, Dr. Haggenjos commented that, for more than six years, plaintiff's ability to do fine and gross manipulation had been poor. *PAGEID* 440. In 2011, Dr. Haggenjos again opined that plaintiff required surgery and was "unable to work." *PAGEID* 458-59.

5

On November 24, 2011, Dr. Haggenjos completed a physical capacity evaluation. *PAGEID* 477-80.  In an eight-hour workday, plaintiff could stand for zero to two hours, zero to one minute at a time; walk for zero to two hours, zero to one minute at a time; and sit for five to eight hours, one minute at a time. *PAGEID* 477.  Plaintiff could lift 11 to 20 pounds only rarely. *Id.*  He could use his hands for repetitive simple grasping and fine manipulation, but not for pushing and pulling. *Id.*  Plaintiff could rarely bend and climb steps and could never squat, crawl, climb ladders, or reach above shoulder level. *PAGEID* 478.  According to Dr. Haggenjos, plaintiff's condition would likely deteriorate if he were placed under stress and that plaintiff would likely have partial or full day unscheduled absences from work occurring five or more days per month. *Id.*

On that same date, Dr. Haggenjos also opined that, since at least March 2005, plaintiff could occasionally lift and carry one to 10 pounds, rarely lift and carry 11 to 20 pounds, and never lift more than 20 pounds. *PAGEID* 479.  Plaintiff could occasionally reach with his left hand/arm, handle with his left hand, and finger with his left hand. *PAGEID* 479-80.  Plaintiff could rarely reach with his right hand/arm, handle with his right hand, and finger with his right hand. *Id.*

On November 28, 2011, Dr. Haggenjos diagnosed right CTS, C6-7 herniated disc, C5-6 herniated disc, lumbar disc disease, right rotator cuff tear, right shoulder replacement, depression, and chronic thoracic sprain. *PAGEID* 473.  According to Dr. Haggenjos, plaintiff

"is permanently disabled for any type of gainful employment, both full and part time." *Id*.

On August 17, 2012, *i.e.,* after the administrative hearing, Dr. Haggenjos indicated that he had misread the form and had assumed that the form called for hours of activity rather than minutes of activity. *PAGEID* 714.  Dr. Haggenjos clarified, "on some occasion, [plaintiff] is unable to stand or walk due to lack of function and severe pain. On other occasions [plaintiff] may stand or walk up to an hour without a break.  The last question should state he is able to sit for an hour without having to make major adjustments." *Id*.  Dr. Haggenjos further opined that plaintiff "is unable to do any type of gainful employment either part or full time." *Id*.

Plaintiff was evaluated by Mark E. Weaver, M.D., on December 9, 2010.  *PAGEID* 446-55.  Plaintiff reported "constant pain in his neck, right shoulder and low back area with pain radiating to the right leg and down his right arm frequently with numbness in the outer right arm and the outer right lower leg and foot." *PAGEID* 446.  Upon examination, plaintiff had consistent slight weakness of the musculature of the right shoulder and upper extremity.  *PAGEID* 449. Grip strength testing was consistent and averaged 34 kg in the right hand and 54 kg in the left hand; grasp, manipulation, pinch, and fine coordination activities were normal bilaterally.  *Id*.  Plaintiff reported paresthesia over the lateral right arm, ulnar right hand, right little, ring, and middle fingers, and in the L5 dermatome of the right lower extremity.  *Id*.  Dr. Weaver diagnosed "[p]robable chronic

7

neck and radicular right upper extremity pain, probable mild broad-based disc protrusions at C5-6 and C6-7 by medical history," "[p]robable chronic low back and radicular right lower extremity pain, etiology unknown," and "[p]robable chronic right shoulder pain, etiology unknown." *PAGEID* 550. Dr. Weaver opined that plaintiff "would probably be limited in the performance of physical activities involving sustained sitting, standing, walking, climbing, reaching with the right upper extremity, lifting and carrying." *Id*. Plaintiff would also "probably be capable of performing physical activities involving handling objects, speaking, hearing, following directions and travel." *Id*.

W. Jerry McCloud, M.D., reviewed the record for the state agency on January 21, 2011, *PAGEID* 93-95, and opined that plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. *PAGEID* 94. Plaintiff should never climb ladders, ropes, or scaffolds, could only occasionally stoop, kneel, couch, and crawl, and would be limited in reaching "[r]ight [o]verhead." *Id*. William Bolz, M.D., another state agency physician, reviewed the record on March 18, 2011, and opined that plaintiff had the same limitations as found by Dr. McCloud. *PAGEID* 105-06.

Plaintiff was evaluated by Robin G. Stanko, M.D., on August 9, 2011 in connection with his workers compensation claim. *PAGEID* 671-

8

73. Dr. Stanko opined that plaintiff had a "total combined impairment of 27% whole person impairment." *PAGEID* 673.

Plaintiff underwent a psychological examination by Marian Chatterjee, Ph.D., on March 24, 2012. *PAGEID* 665-69. Plaintiff reported being overwhelmed and unable to find work because of his physical limitations, low stress tolerance, low self-worth, and feeling drained. *PAGEID* 665. Plaintiff also reported a poor appetite, anhedonia, and feeling sad most of the time. *PAGEID* 666. Dr. Chatterjee summarized her findings as follows:

> George Rosser was a hard working family man with a history of performing very physical jobs. After his 7/25/03 injury to the shoulder and spine, he struggled through the pain and continued on light duty until March 2005 when he sustained another injury to the same body parts. He has been unable to function vocationally due to severe pain, and has become demoralized, hopeless, and negative. He requires a great deal of medication to manage his condition and has developed troubling side effects ranging from kidney stones to constipation/diarrhea. Mr. Rosser feels like a failure as a provider. Tolerance for stress is low and he loses his temper easily. Formerly very active in all areas of life, he now spends the majority of his time in bed, though does not sleep well and does not feel rested. Quality of life is poor and he feels like a spectator. "Everything is passing me by." It is my opinion that George Rosser has developed Dysthymic Disorder (DSM-IV: 300.4) as a direct and proximate result of injuries sustained on 7/25/2003. Mr. Rosser requires aggressive psychotherapy to improve coping and pain management skills. A psychiatric consultation is also advised. His condition is presently temporarily and totally disabling in and of itself.

*PAGEID* 668-69.

## III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the cervical

9

spine, right shoulder impairment with bone spurs, and right carpal

tunnel syndrome. *PAGEID* 116. The administrative law judge also found

that plaintiff's impairments neither meet nor equal a listed

impairment and leave plaintiff with the residual functional capacity

("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) with
> the following abilities and limitations: (1) able to
> occasionally lift and carry 20 pounds, frequently lift and
> carry 10 pounds, and push or pull to the same extent using
> the lower extremities and the left upper extremity; (2)
> able to frequently push or pull using the right upper
> extremity; (3) able to occasionally reach with the right
> upper extremity with no limitations in reaching with the
> left upper extremity; (4) able to stand or walk about 6
> hours and sit about 6 hours in an 8 hour workday; (5)
> cannot climb ladders, ropes or scaffolds; (6) able to
> occasionally stoop, crouch, kneel, and crawl.

*PAGEID* 118-19. Although this residual functional capacity would

preclude plaintiff's past relevant work as a welder, fitter and truck

driver, the administrative law judge relied on the testimony of the

vocational expert to find that plaintiff is nevertheless able to

perform a significant number of jobs in the national economy,

including such jobs as cashier, counter and rental clerk, and retail

sales clerk. *PAGEID* 120-21. Accordingly, the administrative law

judge concluded that plaintiff was not disabled within the meaning of

the Social Security Act from March 8, 2005, his alleged onset date,

through December 31, 2010, the date he was last insured. *PAGEID* 121.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the

Commissioner's decision is limited to determining whether the findings

10

of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff challenges both the decision of the Appeals Council as well as the decision of the administrative law judge. Plaintiff argues that this action should be remanded under Sentence 4 of 42 U.S.C. § 405(g) because the administrative law judge erred in plaintiff's RFC determination and in evaluating the medical opinions of Dr. Chatterjee and plaintiff's treating physician Dr. Haggenjos.

11

Plaintiff also argues that the Appeals Council erred when it declined to review the administrative law judge's decision because plaintiff presented new and material evidence to the Appeals Council.  Each argument will be addressed in turn.

Plaintiff argues that the administrative law judge violated the treating physician rule in evaluating Dr. Haggenjos's opinions. *Statement of Errors*, pp. 14-17.  The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight should be given to the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. § 404.1527(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.,* reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

12

and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486
F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at
*5 (July 2, 1996)).  This special treatment afforded to the opinions
of treating providers recognizes that

> "these sources are likely to be the medical professionals
> most able to provide a detailed, longitudinal picture of
> [the claimant's] medical impairment(s) and may bring a
> unique perspective to the medical evidence that cannot be
> obtained from the objective medical findings alone or from
> reports of individual examinations, such as consultative
> examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Plaintiff treated regularly with Dr. Haggenjos for more than 20
years.  *See PAGEID* 439, 682-711.  Dr. Haggenjos opined on three
occasions that plaintiff is unable to work.  *PAGEID* 435-37 (August
2010), 440 (November 2010), 458-59 (2011).  On November 1, 2010, Dr.
Haggenjos opined that, for more than six years, plaintiff's ability to
perform fine and gross manipulation had been poor.  *PAGEID* 440.  In
November 2011, Dr. Haggenjos opined that, in an eight-hour workday,
plaintiff could stand for zero to two hours, zero to one minute at a
time; walk for zero to two hours, zero to one minute at a time; and
sit for five to eight hours, one minute at a time.  *PAGEID* 477.
Plaintiff could only rarely lift 11 to 20 pounds and could not use his
hands for repetitive pushing and pulling.  *Id*.  Plaintiff could only
rarely bend and climb steps and could never squat, crawl, climb
ladders, or reach above shoulder level.  *PAGEID* 478.  On November 24,
2011, Dr. Haggenjos opined that, since at least March 2005, plaintiff
could occasionally reach with his left hand/arm, handle with his left

13

hand, and finger with his left hand. *PAGEID* 479-80. Plaintiff could
rarely reach with his right hand/arm, handle with his right hand, and
finger with his right hand. *Id*.

The administrative law judge considered Dr. Haggenjos's
opinions and assigned them "little weight:"

> The claimant's treating physician, Dr. Jeffrey Haggenjos,
> has opined on several occasions that the claimant is
> "unable to work," that the claimant can sit, stand and walk
> only 1 minute at a time, and can rarely use his right hand
> to handle and finger (Exhibits 12F, 16F, 18F). However,
> the undersigned observed that the claimant was in fact able
> to sit for at least 20 minutes without difficulty during
> the hearing. Further, the claimant has been observed by
> other physicians to have a normal gait (Exhibit 19F).
> Lastly, other physicians have examined the clamant and
> found him to have normal strength, grip and range of motion
> in both upper extremities (Exhibits 19F, 20F). Dr.
> Haggenjos's opinion is inconsistent with other objective
> medical evidence of record and therefore granted little
> weight.

*PAGEID* 119. Although succinct, the administrative law judge's
analysis is sufficiently specific as to the weight given to Dr.
Haggenjos's opinions and the reasons for assigning that weight. There
is substantial evidence to support the administrative law judge's
determination that plaintiff had been observed to have a normal gait
and normal strength, grip, and range of motion in both upper
extremities. *See PAGEID* 487 (normal gait; full shoulder range of
motion, bilaterally; and normal upper extremity strength,
bilaterally); 501 (normal gait); 502 (5/5 strength in right and left
grip and in upper extremities). Under the circumstances, a formulaic
recitation of factors is not required. *See Friend v. Comm'r of Soc.
Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion

14

permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Referring to the administrative law judge's rejection of Dr. Haggenjos' limitation on plaintiff's ability to sit, stand and walk for no more than 1 minute at a time, plaintiff argues that the administrative law judge should have recognized Dr. Haggenjos's mistake and "sever[ed] . . . that portion from consideration of the remainder of the opinion" because "the one minute duration limitation did not make sense in relation to all of Dr. Haggenjos's records and the other portions of his opinion." *Statement of Errors*, p. 16. Plaintiff's argument is not well taken.

As noted *supra*, this Court's review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *See Longworth*, 402 F.3d at 595. This Court will not remand an action under Sentence 4 of 42 U.S.C. § 405(g) on the basis that evidence submitted after the administrative law judge's decision, such as Dr. Haggenjos's August 2012 letter, was material to the administrative law judge's decision. *See e.g., Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). This Court may remand an action under Sentence 6 of 42 U.S.C. § 405(g) for consideration of new and material evidence, but plaintiff has not sought a Sentence 6 remand on the basis of Dr. Haggenjos's August 2012 letter. Furthermore, plaintiff's proposal, *i.e.*, to require an

15

administrative law judge to disregard a portion of a treating source opinion if the administrative law judge concludes that the source was mistaken about his or her medical opinion, would amount to a substitution of the administrative law judge's medical opinion for that of the treating source – a wholly unauthorized result. *See e.g.*, *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912-13 (N.D. Ohio 2008).

It is well-settled that the Commissioner's decision, if supported by substantial evidence, must be affirmed even if the plaintiff's position is also supported by substantial evidence. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Because the administrative law judge correctly applied the standards of the treating physician rule to his evaluation of Dr. Haggenjos's opinions, and because substantial evidence supports his findings, the Court finds no error with the Commissioner's decision in this regard.

Plaintiff next argues that the administrative law judge erred in evaluating the opinion of Dr. Chatterjee and in failing to include in plaintiff's RFC assessment the functional limitations opined by Dr. Chatterjee. *Statement of Errors*, pp. 6-7, 11-12.  An administrative law judge is required to evaluate every medical opinion, regardless of its source.  20 C.F.R. § 404.1527(c). However, not every medical opinion is treated equally; the Commissioner's regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources (or examining sources); and (3) treating sources.  As a one-time consultative psychological

16

examiner, Dr. Chatterjee is properly classified as a nontreating source. *See* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant].").

As discussed *supra*, the Social Security Administration accords the greatest weight to the opinions of treating sources; if an administrative law judge does not give "controlling weight" to the medical opinion of a treating source, he must provide "good reasons" for discounting that opinion. *See Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). "However, this requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (citing *Smith*, 482 F.3d at 876 (emphasis in original)). With regard to nontreating sources such as Dr. Chatterjee, "the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined'" him. *Id.* (quoting 20 C.F.R. § 404.1527(d)(1)). *See also Smith*, 482 F.3d at 875. In determining how much weight to give the opinion of a nontreating source, an administrative law judge should consider such factors as "the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

17

Dr. Chatterjee diagnosed a dysthymic disorder and recommended psychotherapy and a psychiatric consultation. She opined that plaintiff's "condition is presently temporarily and totally disabling in and of itself. *PAGEID* 668-69. The administrative law judge expressly considered Dr. Chatterjee's opinion, but afforded "little weight" to the opinion because it was "not supported by objective evidence, not rendered by a source shown to be familiar with this Agency's and occupational standards, and is highly dependent upon the claimant's reports of symptoms and limitations where the claimant is found to be not wholly reliable as a reporter of symptoms and limitations." *PAGEID* 119. The administrative law judge also found that Dr. Chatterjee rendered the opinion "after not[ing] essentially no objective abnormalities upon examination." *Id.*

The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Chatterjee's opinion and the reasons for providing that weight, and it is clear that the administrative law judge considered the appropriate factors in evaluating Dr. Chatterjee's opinion. The administrative law judge's reasons for assigning "little weight" to the opinion are also supported by substantial evidence. Notably, the overwhelming majority of Dr. Chatterjee's opinion is a narrative report that simply recites plaintiff's self-reported history, symptoms, and limitations. *Compare PAGEID* 668-69, *with PAGEID* 665-67. As plaintiff argues, a psychological evaluation is often dependent on the subjective presentation of the patient. *See Winning v. Comm'r of Soc. Sec.*, 661

18

F.Supp.2d 807, 821 (N.D. Ohio 2009). However, it is not improper for
an administrative law judge to consider whether a medical opinion is
"highly dependent upon the claimant's reports of symptoms and
limitations," especially where, as here, the administrative law judge
also finds that the claimant's reported symptoms and limitations are
not entirely credible.[1] *See PAGEID* 118. Accordingly, the Court finds
no error in the administrative law judge's consideration of Dr.
Chatterjee's opinion.

Plaintiff also argues that the administrative law judge erred in
determining plaintiff's RFC by "fail[ing] to include functional
limitations related to [plaintiff's] well-documented carpel tunnel
syndrome." *Statement of Errors*, pp. 6-7. Specifically, plaintiff
argues that the administrative law judge made no mention of carpel
tunnel syndrome in plaintiff's RFC determination and "neglected to
describe or consider limitations in [plaintiff's] ability to handle
and grasp objects despite the identification of right carpel tunnel
syndrome as one of his severe impairments." *Id.* at pp. 7-8.
Plaintiff points to previous complaints of numbness in his fingers, a
physical examination showing paresthesia over his right arm, hand, and
three fingers, and a grip test performed by Dr. Weaver which evidenced
a lower grip strength in plaintiff's right hand than in his left, all
as evidence of his functional limitations. *Id.* at pp. 9-10. Plaintiff
also refers to Dr. Weaver's opinion that plaintiff "would 'probably be

---

[1] Significantly, plaintiff does not challenge the administrative law judge's
credibility determination.

19

capable of' handling objects," and argues that Dr. Weaver did not
"affirmatively state that [plaintiff] actually had the capability to
handle objects." *Id*.  Plaintiff's arguments are not well taken.

An RFC determination is an indication of an individual's work-
related abilities despite their limitations. *See* 20 C.F.R. §
416.945(a).  The RFC is an administrative finding of fact reserved to
the Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2),
(3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir.
2004).  It represents the most, not the least, that a claimant can do
despite his impairments.  20 C.F.R. §§ 404.1545(a); *Griffeth v. Comm'r
of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  In assessing a
claimant's RFC, an administrative law judge must consider all relevant
record evidence, including medical source opinions, on the severity of
a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a).
Furthermore, courts have stressed the importance of medical opinions
to support a claimant's RFC, and cautioned administrative law judges
against relying on their own expertise in drawing RFC conclusions from
raw medical data. *See Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL
3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin*, 605
F.Supp.2d at 912.

In the case presently before the Court, the administrative law
judge found that plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) with
> the following abilities and limitations: (1) able to
> occasionally lift and carry 20 pounds, frequently lift
> and carry 10 pounds, and push or pull to the same extent using
> the lower extremities and the left upper extremity; (2)

> able to frequently push or pull using the right upper
> extremity; (3) able to occasionally reach with the right
> upper extremity with no limitations in reaching with the
> left upper extremity; (4) able to stand or walk about 6
> hours and sit about 6 hours in an 8 hour workday; (5)
> cannot climb ladders, ropes or scaffolds; (6) able to
> occasionally stoop, crouch, kneel, and crawl.

*PAGEID* 118-19. In making this RFC assessment, the administrative law

judge considered all the opinion evidence, including Dr. Weaver's

December 2010 opinion that plaintiff "'would probably be capable of

performing physical activities involving handling objects, speaking,

hearing, following directions and travel.'" *PAGEID* 119 (quoting

Exhibit 14F). The administrative law judge also referred to medical

records containing the diagnosis of carpel tunnel syndrome, but also

noted that "physicians have examined the claimant and found him to

have normal strength, grip and range of motion in both upper

extremities (Exhibits 19F, 20F)." *PAGEID* 119. As discussed *supra*,

this finding is supported by substantial evidence. Furthermore,

although grip strength testing performed by Dr. Weaver averaged 34 kg

in the right hand and 54 kg in the left hand, Dr. Weaver also noted

that plaintiff's "[g]rasp, manipulation, pinch and fine coordination

activities were normal bilaterally." *PAGEID* 449. The record

demonstrates that plaintiff was diagnosed with carpel tunnel syndrome

and that, at times, he reported and suffered from related symptoms.

*See PAGEID* 340-43, 489, 678, 675. The record does not, however,

demonstrate that plaintiff suffered greater limitations than those

found in the administrative law judge's RFC assessment. Accordingly,

the Court concludes that the administrative law judge did not err in

21

failing to include a limitation based on handling and grasping in plaintiff RFC assessment.  This conclusion also belies plaintiff's related argument that the administrative law judge erred in relying on the opinions of Drs. McCloud and Bolz[2] in forming plaintiff's RFC because their opinions did not consider limitations posed by plaintiff's carpal tunnel syndrome.  *See Statement of Errors*, pp. 16-17.

In short, the Court concludes that the administrative law judge applied all proper standards and that his decision is supported by substantial evidence.

Plaintiff also argues that the Appeals Council erred by failing to review the administrative law judge's decision because plaintiff had submitted new and material evidence to the Appeals Council. *Statement of Errors*, pp. 17-20.

On May 30, 2013, the Appeals Council declined to review the decision of the administrative law judge.  *PAGEID* 32-34.  When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner.  *Casey v. Secy. of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. § 404.955).  Under such circumstances, a court called upon to review the final decision of the Commissioner of Social Security is confined to a review of the administrative law judge's decision and the evidence presented to the

---

[2] Drs. McCloud and Bolz are "nonexamining sources" because they are physicians who provided a medical opinion in plaintiff's case without examining plaintiff.  *See* 20 C.F.R. §§ 404.1502, 416.902.

administrative law judge. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)).  This Court has no authority to review the decision of the Appeals Council. *See Cline*, 96 F.3d at 148 ("[T]he district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision.").

A district court may, under certain circumstances, remand a case under Sentence 6 of 42 U.S.C. § 405(g) for further administrative proceedings in light of new and material evidence.  *Id*.

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g).  A plaintiff has the burden under this provision to demonstrate that the additional evidence presented is both "new" and "material" and that there is "good cause" for the failure to present this evidence to the administrative law judge.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Evidence is "new," for purposes of this provision, only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990).  Evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new

23

evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). *See also Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). A plaintiff may establish "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence at the administrative hearing. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). This standard applies to evidence submitted for the first time to the Appeals Council. *Id.; Cline,* 96 F.3d at 148.

Plaintiff submitted to the Appeals Council for the first time a May 8, 2012 psychological evaluation by Douglas Pawlarczyk, Ph.D. *PAGEID* 715-50. Dr. Pawlarczyk diagnosed dysthymic disorder and opined that plaintiff's "depression is work prohibitive. In this regard, [plaintiff's] low energy would make it difficult for him to perform work-like tasks at a competitive rate." *PAGEID* 723-724. Dr. Pawlarczyk further opined that plaintiff's "reduced interest in activities and irritability in social situations would also make it difficult for him to relate to coworkers, supervisors, and the general public. Given these difficulties, he would be unable to engage in any competitive employment at this time." *PAGEID* 724.

Even assuming that plaintiff actually seeks a Sentence 6 order of remand, *see Statement of Errors*, p. 1 ("Plaintiff moves for . . . remand of this claim pursuant to Sentence 4 of 42 U.S.C. Section 405(g) . . . ."), plaintiff has not met his burden of establishing that such an order of remand is appropriate. Dr. Pawlarczyk's opinion was generated long after December 31, 2010 – *i.e.*, the date that

24

plaintiff's insured status expired; plaintiff has not established that Dr. Pawlarczyk's opinion is material even if it establishes a deterioration in plaintiff's condition since the lapse of his insured status.  *See Smith v. Comm'r of Soc. Sec.*, 473 F. App'x 443, 445-46 (6th Cir. 2012) (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 277-78 (6th Cir. 2010)).  *See also Oliver v. Sec. of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  The Court also finds that there is not a reasonable probability that the Commissioner would have reached a different result had Dr. Pawlarczyk's opinion been presented to the administrative law judge.  Significantly, Dr. Pawlarczyk noted that plaintiff reported "no previous mental health treatment" and that plaintiff "did indicate a high suspicion for a malingering tendency on one of the test instruments that was administered to him."  *PAGEID* 723.  Remand is therefore not warranted under even Sentence 6 of 42 U.S.C. § 405(g).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28

25

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


February 4, 2014                           *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                      United States Magistrate Judge


26